Lawrence P. Eagel (LE4505)
Justin A. Kuehn (JK5853)
BRAGAR EAGEL & SQUIRE, P.C.
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff and the Classes*

JUDGE CROTTY

**12 CV 6583**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINDY L. BREITMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED COMPUTER SERVICES, INC. NEXTSTUDENT, INC., and U.S. BANK, N.A.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cindy L. Breitman ("Ms. Breitman" or "Plaintiff"), by her undersigned counsel, on behalf of herself and all other similarly situated, complaining of defendants Affiliated Computer Services, Inc. ("ACS"), NextStudent, Inc. ("NextStudent"), and U.S. Bank, N.A. ("U.S. Bank") (ACS, NextStudent, and U.S. Bank are referred to collectively, as "Defendants"), alleges upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      This is an action against defendants ACS, NextStudent, and U.S. Bank for breach of contract, violations of New York General Business Law § 349, and, alternatively, unjust enrichment.

2.      Defendants' common scheme takes a variety of forms, but all of Defendants' techniques have the same goal – to credit payments to student loans improperly to extract more interest from borrowers.

3.      Defendants' scheme included:

   (a)  applying payments received in excess of the stated monthly amount due ("Prepayments"), not to reduce principal, but to keep borrowers in debt;

   (b) ignoring borrowers' express instructions as to how Prepayments should applied to borrowers' loans; and

   (c) failing to provide promised borrower benefits.

4.      The end result is Defendants' scheme kept borrowers trapped in student loan debt that borrowers were actively seeking to repay as fast as possible to lower the total cost of borrowing.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

7.     Plaintiff Cindy L. Breitman, is an individual residing in the State of New York. In or around February 2006, Ms. Breitman consolidated her federal student loans with NextStudent (the "Consolidated Student Loan"). The Consolidated Student Loan is a federal consolidation loan under the Federal Family Education Loan Program ("FFELP"),[1] which is part of the Higher Education Act of 1965.

8.     NextStudent is an Arizona corporation with its principal executive offices located at 1801 W. Knudsen Drive, Phoenix, Arizona. NextStudent is a nationwide lender of student loans, and transacts business in the state of New York. NextStudent was the original owner and maker of the Consolidated Student Loan.

9.     Defendant ACS is a Delaware corporation with its principal executive offices located at 2828 N. Haskell Avenue, BLDG 1, Floor 19, Dallas, Texas. ACS is, and was at all relevant times, the servicer of the Consolidated Student Loan acting as an agent of the Consolidated Student Loan's owner first NextStudent and later U.S. Bank. ACS is registered to do business in the State of New York. In addition, the ACS office responsible for correspondence with Plaintiff is located in New York.

10.    Defendant U.S. Bank is a national banking association with its principal executive offices located at 425 Walnut Street, Cincinnati, Ohio. Sometime after February 2006, U.S. Bank acquired the Consolidated Student Loan, and it is the current owner of the Consolidated Student Loan. U.S. Bank has an office located at 100 Wall Street, New York, New York, and transacts business in the State of New York.

---

[1]     Under FFELP private lenders made loans to students guaranteed by state or private non-profit guarantee agencies and reinsured by the U.S. Department of Education.

**BACKGROUND**

11. The Consolidated Student Loan is a fixed interest rate loan with "level" stated payments and a term of 30 years. The original balance of Ms. Breitman's Consolidated Student Loan was $111,351.74 with an annual interest rate of 5.5%. According to ACS's website, acs-education.com, "[t]he Level Repayment Plan is designed to allow the borrower to make payments of equal amounts throughout the payment period. <u>This plan provides the least amount of interest accrual</u> over the life of the loan." (emphasis added)

12. NextStudent promised the following benefits to borrowers who consolidated their student loans with NextStudent:

   (a) 1% rate reduction after "only" 36 consecutive on-time payments ("On-Time Payment Benefit");

   (b) .25% rate reduction for using "Automatic Debit" to make monthly payments ("Auto Debit Benefit");[2]

   (c) .375% rate reduction to the "grace period rate" after 6 months of consecutive on-time payments ("Grace Period Benefit"); and

   (d) 1% principal rebate after a loan is fully funded ("Principal Reduction Benefit").

13. NextStudent further represented that the above-listed benefits, "apply in the event that your loan is purchased in a secondary market or if the loan stays with us at NextStudent."

14. To receive the Auto Debit Benefit (reflected in the 5.5% interest rate mentioned above), Plaintiff enrolled in a program offered by ACS known as "*Checkmate II*". Under *Checkmate II*, every month the borrower's loan payment was to be deducted automatically from his/her bank account and applied to the loan as of the assigned due date each month. ACS represented to borrowers that *CheckmateII* was the most convenient way to make their student

---

[2] The Auto Debit Benefit terminates if a borrower ceases to make payments using "Automatic Debit".

4

loan account payments. ACS said "You will save time and money, as well as eliminate the hassle of writing checks."

15. Plaintiff's assigned payment due date for the Consolidated Student Loan was, at all relevant times, the 14th of each month.

16. In or around May 2006, Plaintiff began, through *Checkmate II*, making monthly payments on the Consolidated Student Loan of $649.82 a month. From time to time, Plaintiff made Prepayments in order to repay the Consolidated Student Loan in less time and reduce her overall interest charge.

## THE PREPAYMENT MISREPRESENTATION

17. The *Checkmate II* terms and conditions (the "Terms and Conditions") provided the following false explanation of the effect of a Prepayment on a borrower's monthly *Checkmate II* auto-payment (the "Prepayment Misrepresentation"):

> Please note that prepayments, defined as additional payments received on your loan(s) greater than the regular installment or the amount due, will not satisfy installments or prevent the next month's debit. (underlines added)

18. The Prepayment Misrepresentation was false, deceptive, and misleading because it hid from borrowers the manner in which Prepayments would be applied to their loans. The Prepayment Misrepresentation led borrowers to believe that a Prepayment would be applied immediately to reduce the principal of their loans in addition to their monthly *Checkmate II* payment. This explanation induced borrowers to make Prepayments by making borrowers believe that Prepayments would lead to faster repayment and a lower total paid to repay fully. However, the opposite is true – ACS misapplied Prepayment specifically to keep borrowers in debt to maximize the amount of interest paid over the life of the loans.

19.     Contrary to the Prepayment Misrepresentation, Prepayments were applied by ACS, in whole or in part, to satisfy <u>future</u> installments, <u>do</u> prevent the next month's debit, but often <u>do not</u> reduce principal.  Specifically, the following chart summarizes Plaintiff's Prepayments and the resulting misapplications:

| Date of Prepayment(s) | Amount of Prepayment | Misapplication of Prepayment |
|---|---|---|
| June 23, 2007 | $400.00 | Only $252.01 of Prepayment applied to principal.<br><br>July 2007, *Checkmate II* payment reduced to $249.82 and applied to interest only. |
| August 10, 2007 | $400.00 | Prepayment applied to interest only.<br><br>August 2007, *Checkmate II* payment reduced to $249.82, only $46.54 of all payments received by ACS in August 2007 applied to principal. <u>Compare with</u>, August 2006, where Plaintiff paid the same total amount to ACS, but $132.62 was applied to principal. |
| September 9, 2007 | $500.00 | Only $73.64 of Prepayment applied to principal.<br><br>September 2007, *Checkmate II* payment reduced to $149.82. |
| September 21, 2007 | $200.00 | Only $85.36 of Prepayment applied to principal.<br><br>October 2007, *Checkmate II* payment reduced to $449.82. |

6

| October 21, 2007 | $300.00 | Only $185.53 of Prepayment applied to principal.<br><br>November 2007, *Checkmate II* payment reduced to $349.82 and applied to interest only. |
|---|---|---|
| December 12, 2008 | $750.00 | Only $283.26 of Prepayment applied to principal.<br><br>December 2008 and January 2009 *Checkmate II* payments skipped. |
| January 17, 2009 | $750.00 | Only $148.71 of Prepayment applied to principal.<br><br>Compare with, January 2008, where Plaintiff paid over $100.00 less to ACS, but approximately the same amount was applied to principal as the larger payment made in January 2009. |
| February 14, 2009 | $100.18 | March 2009, *Checkmate II* payment skipped. |
| March 16, 2009 ($670.00), April 12, 2009 ($750.00), and April 13, 2009 ($200.00) | $1,620.00 (total) | Only $676.14 (total) of Prepayment applied to Principal.<br><br>April 2009, *Checkmate II* payment skipped. |
| August 12, 2009 | $281.44 | Prepayment applied to interest only. |
| July 14, 2011 | $649.82 | August 2011, *Checkmate II* payment skipped. September and October 2011, *Checkmate II* payments applied entirely to interest. |

| | | |
|---|---|---|
| November 14 ($649.82) and 21 ($5,000.00), 2011 and | $5,649.82 (total) | December 2011, *Checkmate II* payment skipped.  January 2012, *Checkmate II* payment applied entirely to interest.  February 2012, *Checkmate II* payment of only $111.93 applied to principal Compare with, February 2011 *Checkmate II* payment where $181.64 was applied to principal. |

20. As shown above, Plaintiff's Prepayments, contrary to *Checkmate II*'s representations, were often misapplied by ACS, in whole or in part, to satisfy installments or to prevent the following months' debits.

21. Were the Prepayments were applied according Defendants' Terms and Conditions, they would not have caused *Checkmate II* payments to be skipped.  Defendants' scheme resulted in Plaintiff and the other class members paying greater interest than if the Prepayment had properly been immediately applied to principal.  This is corroborated by the final monthly statement (April 2006) Plaintiff received before commencing payments under *Checkmate II*.[3]  This statement contains the following:

> **Prepayment:** You may prepay your loan at any time without penalty. If you have a FFELP (Stafford, PLUS, SLS or Consolidated loan) loan and send amounts in excess of the amount currently due, your next payment due date will be advanced by the number of equivalent monthly installments received. **You will receive a letter informing you of your pre-paid condition**. You will not receive monthly bills while in a pre-paid status. Note: If you have a loan which is not FFELP, excess payments may not advance your due date. (emphasis added)

22. Plaintiff never received a letter, or any other communication, informing her that she was in any "pre-paid condition", that her due date was advanced, or that any *Checkmate II* payments would be skipped.

---

[3] Plaintiff's April 2006 statement from ACS states, "You will no longer receive a monthly statement but can access your account information online at www.acs-education.com."

23.     On November 14, 2011, Plaintiff sent the following email to ACS customer service,[4] to make absolutely clear how she wanted Prepayments applied to the Consolidated Student Loan:

> I would like it on record that any extra payments I make beyond my monthly Checkmate II deductions should be applied to my principal and should NOT advance my due date. I want Checkmate II to ALWAYS continue to deduct on a monthly basis and I want the option to send in EXTRA payments that are applied to the principal. Do NOT skip any monthly deductions. Please verify that this is on record. I made an extra payment today and want to be assured that I will still have my regular deduction in December and going forward any time I make an extra payment.

24.     Despite the November 14, 2011 email, Plaintiff's Prepayments made in November 2011 were still misapplied.[5]

25.     In January, February, and March 2012, Plaintiff contacted ACS customer service numerous times, by phone and electronically, for an explanation as to why her Prepayments continued to be misapplied. For example, Plaintiff sent the following email to ACS customer service on January 22, 2012:

> As you will see below I sent this email back in November 2011 stating that my due date should never be advanced by additional payments. It was acknowledged as received and stated on my account. Yet on 1/14/12 my checkmate II deduction was applied solely to my interest and not the principal!!!! Why would I make a large payment to my principal only to have future payments applied only to interest rates that will accumulate in greater interest? I need this corrected immediately!! !!!! ! !

26.     Despite Plaintiff's efforts, in January and February 2012, she received no explanation as to why Prepayments were being misapplied. Finally on March 2, 2012, Plaintiff received the follow explanation as to the misapplication of Prepayments:

---

[4]     In or around August 2011, Plaintiff informed ACS that her due date should never be advanced.
[5]     As shown in the above chart, these misapplications were: December 2011, *Checkmate II* payment skipped; January 2012, *Checkmate II* payment applied entirely to interest; and a diminished amount of February 2012, *Checkmate II* payment applied to principal.

9

> Ms. Breitman,
> I haven't been able to call you since I have been swamped with work but I received an update regarding your request.  <u>I was actually denied the adjustment, I was told the same thing you were told</u> **"that's how the system works"**…
> (underline and emphasis added)

27.     The above-quoted explanation from ACS about misapplication of Prepayments makes clear that Defendants do not provide borrowers with the notice required and that borrowers instructions as to how Prepayments are applied to their loans are systematically ignored.

28.     Defendants' deception was concealed by Defendants' failure to allow borrowers to access a payment history showing the value of the principal of their loans after each payment is applied.  Plaintiff requested such a history from ACS along with an amortization schedule for the remainder of her payments.  ACS failed to provide Plaintiff with the requested documents, and these documents are not available on www.acs-education.com.

## DEFENDANTS FAIL TO APPLY BORROWER BENEFITS

29.     Plaintiff made 36 consecutive on-time payments toward the Consolidated Student Loan, and therefore qualified for the On-Time Payment Benefit.  However, the On-Time Payment Benefit was never applied to Consolidated Student Loan.

30.     Plaintiff made 6 months of consecutive on-time payments toward the Consolidated Student Loan, and therefore qualified for the Grace Period Benefit.  However, the Grace Period Benefit was never applied to the Consolidated Student Loan.

31.     The Consolidated Student Loan was fully funded, and therefore qualified for the Principal Reduction Benefit.  However, the Principal Reduction Benefit was never applied to the Consolidated Student Loan.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings the First, Second, and Third Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all borrowers of student loans owned or serviced by Defendants who made Prepayments to their loans owned or serviced by Defendants and, instead of having their Prepayments applied immediately to principal, had *Checkmate II* payments skipped and had their Prepayments applied other than immediately to reduce the principal of their loans.  This class period extends from the present back to the earliest period for which the statutes of limitations allow (the "Prepayment Class").

33.     Plaintiff brings the Fourth, Fifth, and Sixth Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class, consisting of all borrowers of student loans owned or serviced by Defendants who were promised and qualified for borrower benefits applicable to their loans owned or serviced by Defendants, such as the On-Time Payment Benefit, the Grace Period Benefit, and the Principal Reduction Benefit, but for whom Defendants never applied the earned benefit to decrease as promised the borrowers' loans.  This class period extends from the present back to the earliest period for which the statutes of limitations allow (the "Benefits Class").

34.     The members of the Classes are so numerous that joinder of all Members is impracticable.  Although the exact number of members of the Classes is unknown to Plaintiff at this time and can only by ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the Classes.

35. Common questions of law and fact exist to all members of the Classes and predominate over any questions affecting solely individual Members. Among the questions of law and fact common to the Classes are:

(a) Whether Defendants breached their contract with Plaintiff and the other members of the Classes;

(b) Whether Defendants' conduct violated New York General Business Law § 349; and

(c) Whether the Court should enjoin Defendants from continuing to engage in the conduct complained of herein.

36. Plaintiff's claims are typical of the claims of the members of the Classes, as Plaintiff and the other members of the Classes sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Classes.

38. A class action is superior to all other available methods for the fair and efficient adjudication for the controversy since joinder of all members of the Classes is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the Classes to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract on behalf of Plaintiff and the Prepayment Class against all Defendants)

39.     Plaintiff repeats and realleges ¶¶ 1 through 38 as if fully set forth herein.

40.     Defendants' contract with Plaintiff and the other Members of the Prepayment Class provides, in relevant part:

(a) "[y]ou may prepay your loan at any time without penalty";

(b) "prepayments, defined as additional payments received on your loan(s) greater than the regular installment or the amount due, will not satisfy installments or prevent the next month's debit"; and

(c) if a borrowers due date is advanced, the borrower "will receive a letter informing [the borrower] of [his/her] pre-paid condition."

41.     Defendants breached their contract by, as alleged above, misapplying Prepayments, skipping *Checkmate II* payments after Prepayments, applying Prepayments in whole or in part to interest, ignoring borrowers' instructions as to application of Prepayments, and failing to provide borrowers notice when their loans were place in a "pre-paid condition" after a Prepayment.

42.     As a result of Defendants' breach of contract, Plaintiff and the other Members of the Prepayment Class have been damaged in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**(Violation of N.Y. GBL § 349 on behalf of Plaintiff
and the Prepayment Class against all Defendants)**

43. Plaintiff repeats and realleges ¶¶ 1 through 42 as if fully set forth herein.

44. Plaintiff and the other Members of the Prepayment Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

45. Defendants engaged in acts and practices that were deceptive or misleading in a material way, and that injured Plaintiff and the other Members of the Prepayment Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

46. Defendants' deceptive acts include – as shown by the Prepayment Misrepresentation – representing to borrowers that: they "may prepay your loan at any time without penalty", Prepayments "will not satisfy installments or prevent the next month's debit", and they will receive notice if their loans were in a "pre-paid condition"; when in fact Defendants system works in the opposite manner by applying Prepayments to thwart prepayment and extract interest from student loan borrowers.

47. Plaintiff and the other Members of the Prepayment Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

48. Plaintiff and the other Members of the Prepayment Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

49. Plaintiff and the other Members of the Prepayment Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

### THIRD CLAIM FOR RELIEF

#### (Alternatively, Unjust Enrichment on behalf of Plaintiff and the Prepayment Class against all Defendants)

50. Plaintiff repeats and realleges ¶¶ 1 through 49 as if fully set forth herein.

51. By applying Prepayment specifically to keep borrowers in debt to maximize the amount of interest paid over the life of the loans and thwart borrowers' attempts to prepay their student loans, Defendants were, and continue, to be enriched at the expense of Plaintiff and the other members of the Prepayment Class.

52. Defendants' retention of the money they received by thwarting borrowers' attempts to prepay their student loans is an unjust enrichment and violates equity and good conscience.

53. As a result of Defendants' unjust enrichment, Plaintiff and the other Members of the Prepayment Class have been damaged in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

#### (Breach of Contract on behalf of Plaintiff and the Benefits Class against all Defendants)

54. Plaintiff repeats and realleges ¶¶ 1 through 53 as if fully set forth herein.

55. Defendants' contract with Plaintiff and the other Members of the Benefits Class provides, in relevant part:

    (a) The On-Time Payment Benefit will be applied after 36 consecutive on-time payments;

    (b) The Grace Period Benefit will be applied after 6 months of consecutive on-time payments; and

    (c) The Principal Reduction Benefit will be applied when a loan is fully funded.

56. Defendants breached their contract by, as alleged above, failing to apply the On-Time Payment Benefit, the Grace Period Benefit, and the Principal Reduction Benefit.

57. As a result of Defendants' breach of contract, Plaintiff and the other Members of the Benefits Class have been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf Plaintiff and of the Benefits Class against all Defendants)

58. Plaintiff repeats and realleges ¶¶ 1 through 57 as if fully set forth herein.

59. Plaintiff and the other Members of the Benefits Class have been injured and suffered damages by violations of section 349(a) of the GBL, which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

60. Defendants engaged in acts and practices that were deceptive or misleading in a material way, and that injured Plaintiff and the other Members of the Benefits Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

61. Defendants' deceptive acts include representing to borrowers that they would receive certain benefits from Defendants that would lessen the total cost of their loans and foster

faster repayment, when in fact Defendants were, and remain, engaged in a scheme to thwart prepayment of student loans, and to make the cost of borrowing as high as possible.

62. Plaintiff and the other Members of the Benefits Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

63. Plaintiff and the other Members of the Benefits Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

64. Plaintiff and the other Members of the Benefits Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

## SIXTH CLAIM FOR RELIEF

### (Alternatively, Unjust Enrichment on behalf Plaintiff and of the Benefits Class against all Defendants)

65. Plaintiff repeats and realleges ¶¶ 1 through 64 as if fully set forth herein.

66. By failing to apply promised borrower benefits as part of a scheme to thwart prepayment of student loans and make the cost of borrowing as high as possible, Defendants were, and continue, the be enriched at the expense of Plaintiff and the other members of the Benefits Class.

67. Defendants' retention of the money they received by failing to apply borrower benefits is an unjust enrichment and violates equity and good conscience.

68. As a result of Defendants' unjust enrichment, Plaintiff and the other Members of the Benefits Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the Classes prays for judgment as follows:

(a) Certifying the proposed Classes pursuant to Fed. R. Civ. P. 23;

(b) Designating Plaintiff as representative of the proposed Classes and designation of Plaintiff's counsel as Class counsel;

(c) Awarding Plaintiff and the other members of the Classes damages for the wrongful acts alleged;

(d) Awarding Plaintiff and the other members of the Classes treble damages for Defendants' violations of GBL § 349;

(e) Enjoining Defendants from continuing the wrongful acts and practices alleged;

(f) Awarding Plaintiff and the other members of the Classes the costs of the suit and attorneys' fees;

(g) Awarding Plaintiff and the other members of the Classes pre and post judgment interest at the maximum legal rate; and

(h) Awarding Plaintiff and the other members of the Classes such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

BRAGAR EAGEL & SQUIRE, P.C.

By: _____
Lawrence P. Eagel (LE4505)
Justin A. Kuehn (JK5853)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858

Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff and the Classes*