**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

CINDY L. BREITMAN, on behalf of herself and all
others similarly situated,

        Plaintiff,

           -against-

XEROX EDUCATION SERVICES, LLC., s/h/i as
AFFILIATED COMPUTER SERVICES, INC.,
NEXTSTUDENT, INC., and U.S.BANK, N.A.,

        Defendants.

---

Case No. 12 cv 6583 (PAC) (FM)


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**


HINSHAW & CULBERTSON LLP
780 Third Avenue, 4th Floor
New York, NY 10017
T: 212-471-6200
F: 212-935-1166 (not for service)

*Attorneys for Xerox Education Services, LLC (until recently known as Xerox Education Services,
Inc. and sued herein as Affiliated Computer Services, Inc.), Affiliated Computer Services, Inc.
(improperly sued herein), and U.S. Bank, N.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ........................................................ 1

PROCEEDINGS TO DATE ............................................................. 3

ARGUMENT ................................................................................ 5

POINT I ...................................................................................... 5

THE APPLICABLE STANDARD UNDER RULE 12(b)(6) ....................... 5

POINT II ..................................................................................... 7

THE FIRST CLAIM FOR RELIEF, FOR ALLEGED BREACH OF CONTRACT FOR "MISAPPLIED" AND "SKIPPED" PAYMENTS, MUST BE DISMISSED AS TO ALL BUT ONE OF THE PAYMENTS ............................. 7

POINT III .................................................................................... 10

THE SECOND CLAIM FOR RELIEF, UNDER N.Y. G.B.L. § 349, MUST BE DISMISSED BECAUSE DEFENDANTS DID NOTHING DECEPTIVE AND PLAINTIFF FAILS TO ALLEGE IT WITH, INTER ALIA, THE REQUISITE SPECIFICITY ............................................................... 10

POINT IV .................................................................................... 13

THE SECOND CLAIM FOR RELIEF UNDER N.Y. G.B.L. § 349 MUST BE DISMISSED AS RESPECTS INJURIES/PAYMENTS PRIOR TO AUGUST 28, 2009, BASED ON THE STATUTE OF LIMITATIONS ....................... 13

POINT V ..................................................................................... 14

THE FOURTH CLAIM FOR RELIEF, FOR BREACH OF CONTRACT, MUST BE DISMISSED BASED ON THE STATUTE OF LIMITATIONS BECAUSE THE ALLEGED BREACHES OCCURRED PRIOR TO AUGUST 28, 2006 ....................................................................... 14

a.   The On Time Payment and Grace Period Benefits ..................... 14

b.   The Principal Reduction Benefit ............................................. 16

POINT VI .................................................................................... 16

THE FIFTH CLAIM FOR RELIEF, UNDER N.Y. G.B.L. § 349, MUST ALSO BE DISMISSED IN ITS ENTIRETY BASED ON THE STATUTE OF

LIMITATIONS BECAUSE ALL THE ALLEGED INJURIES OCCURRED
PRIOR TO AUGUST 28, 2009 ............................................................................ 16

POINT VII ................................................................................................................. 17

THE THIRD AND SIXTH CLAIMS FOR RELIEF, FOR "UNJUST
ENRICHMENT," MUST BE DISMISSED BECAUSE VALID
CONTRACTS WITH DEFENDANTS GOVERN THE SUBJECT MATTER
OF PLAINTIFF'S FIRST AND FOURTH CLAIMS FOR BREACH ...................... 17

POINT VIII ............................................................................................................... 18

THE SIXTH CLAIM FOR RELIEF, FOR "UNJUST ENRICHMENT" WITH
RESPECT TO THE THREE "BENEFITS," MUST BE DISMISSED BASED
ON THE STATUTE OF LIMITATIONS ............................................................... 18

CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. WestPoint-Pepperell, Inc.,*
    945 F.2d 40 (2d Cir. 1991) ...................................................................2, 6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................passim

*Broder v. Cablevision Systems Corp., et al.,*
    418 F.3d 187 (2d Cir. 2005) ..................................................................20

*Cohen v. U.S. Fid. and Guar. Co.,*
    2005 WL 1036097 (S.D.N.Y. May 4, 2005) .......................................11, 12

*Congregation Yetev Lev D'satmar, Inc. v. 26 Adar Corp.,*
    192 A.D.2d 501, 596 N.Y.S.2d 435 (2d Dep't 1993)...............................19

*Coty, Inc. v L'Oreal S.A.,*
    320 Fed. Appx. 5, 2009 WL 835849 (2d Cir. Mar. 31, 2009)...................19

*Cruise v. Doyle,*
    2008 WL 116703 (S.D.N.Y. Jan. 9, 2008) ...............................................7

*Diesel Props S.r.L. v. Greystone Business Credit II LLC,*
    631 F.3d 42 (2d Cir. 2011) ...................................................................19

*Donas v. City of New York,*
    62 A.D.3d 504, 878 N.Y.S.2d 360 (1st Dep't 2009) ...............................16

*Ely-Cruikshank Co., Inc. v. Bank of Montreal, et al.,*
    81 NY.2d 399, 402, 599 N.Y.S.2d 501 (N.Y. 1993).........................14, 16

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994) ..................................................................6, 8

*Gaidon, et al. v. Guardian Life Ins. Co. of Am.,*
    96 N.Y.2d 201, 727 N.Y.S.2d 30 (N.Y. 2001)..................................13, 17

*Galiano v. Fidelity Nat., Tiotle Ins. Co.,*
    684 F.3d 309 (2d. Cir. 2012) ..................................................................6

*Hernandez v. Bank of Nova Scotia,*
  76 A.D.3d 929, 908 N.Y.S.2d 45 (1st Dep't 2010) ...................................................14

*In re Tamoxifen Citrate Antitrust Litig.,*
  466 F.3d 187 (2d Cir. 2006) .............................................................................6, 8

*Independent Energy Corp. v. Trigen Energy Corp.,*
  944 F. Supp. 1184 (S.D.N.Y. 1996) ....................................................................8, 9

*Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan,*
  2012 WL 5877426 (S.D.N.Y. Nov. 21, 2012) ...............................................................6

*Lava Trading Inc. v. Hartford Fire Ins. Co.,*
  326 F. Supp. 2d 434 (S.D.N.Y. 2004) .........................................................11, 12, 13

*Mims v. Arrow Financial Services, LLC,*
  __ U.S. __, 132 S.Ct. 740 (2012) .......................................................................20

*Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank,*
  85 N.Y.2d 20, 623 N.Y.S.2d 529 (N.Y. 1995). ......................................................11, 12

*Poplar Lane Farm LLC v. The Fathers of Our Lady of Mercy,*
  449 Fed. Appx. 57, 2011 WL 5966373 (2d Cir. Nov. 30, 2011) ..........................................18

*Rosner v. Codata Corp.,*
  917 F. Supp. 1009 (S.D.N.Y. 1996) ....................................................................19

*Selkirk v. State of New York,*
  249 A.D.2d 818, 671 N.Y.S.2d 824 (3d Dep't 1998).....................................................16

*Sokolski v. Trans Union Corp.,*
  53 F. Supp. 2d 307 (E.D.N.Y. 1999) ...................................................................12

*Todd v. Exxon Corp.,*
  275 F.3d 191 (2d Cir. 2001) .............................................................................6

*Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey), Ltd.,*
  2012 WL 6186598 (S.D.N.Y. Dec. 12, 2012) ..............................................................6

*USAlliance Federal Credit Union v. Cumis Ins. Soc.,*
  346 F. Supp. 2d 468 (S.D.N.Y. 2004) ...................................................................12

*York v. Ass'n of the Bar of New York,*
  286 F.3d 122 (2d Cir. 2002) .............................................................................7

**STATUTES**

28 U.S.C. § 1331 ........................................................................................20

28 U.S.C. § 1332(d)...........................................................................................................20

C.P.L.R. § 213(2)...............................................................................................................14

Higher Education Act of 1965 (20 U.S.C. §§ 1071-1087-4)...........................................20

Sec. 349 of New York General Business Law ("N.Y. G.B.L.") ............................................passim

**OTHER AUTHORITIES**

34 C.F.R. § 682.................................................................................................................20

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1, 5

5C Wright & Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)...................6

## PRELIMINARY STATEMENT

Xerox Education Services, LLC ("XES"), s/h/i as Affiliated Computer Services, Inc. ("ACS"),[1] ACS and U.S. Bank, N.A. ("USB") (together, "Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Amended Class Action Complaint ("Amended Complaint"), which Plaintiff filed after Defendants pointed out material misrepresentations and omissions in her Complaint.   Defendants will show herein that, based on the allegations themselves of the Amended Complaint, its Second through Sixth Claims for Relief must be dismissed in their entirety and its First Claim for Relief must be dismissed as to *all but one payment* Plaintiff made, namely, that of January 2013.

By way of background, Plaintiff is a borrower, under the Federal Family Education Loan Program, pursuant to a promissory note she signed in January 2006.   Her initial lender was Defendant NextStudent, Inc. ("NS"). USB later purchased her loan and others from NS. At all times, XES serviced Plaintiff's loan and those others pursuant to contracts with NS and, then, USB. Amended Complaint, ¶¶ 7-10.   Plaintiff's claims focus mostly on XES's servicing of her loan and, particularly, its Checkmate II auto-debit service, to which she has subscribed at certain times. Checkmate II is a convenience offered to NS/USB's borrowers.   Under it, a borrower's monthly repayments are automatically debited from her checking account.   Its use by NS/USB's

---

[1] Xerox Education Services, Inc. recently became Xerox Education Services, LLC.  In all other respects, they are the same entity.  Moreover, Xerox Education Services, LLC intends to continue to use the name ACS Education Services as a trade name.

borrowers is not mandatory, and their borrowers receive a .25% interest rate deduction for using it. Amended Complaint ¶¶ 14-17, 19.[2]

Plaintiff claims that Defendants "misapplied" and "skipped" some Checkmate II payments and that their allegedly doing so breached their contracts with her (Plaintiff's First Claim for Relief), were purportedly "deceptive business practices" under Sec. 349 of New York General Business Law ("N.Y. G.B.L.") (her Second Claim for Relief) and unjustly enriched Defendants (her Third Claim for Relief). Her breach of contract claim must be dismissed as to all but one of the allegedly "skipped" or "misapplied" payments because Defendants complied with the terms and conditions which actually were in effect at the relevant times (and which Plaintiff grossly mischaracterizes). With respect to her claim under N.Y. G.B.L. §349, it must be dismissed because Defendants did nothing deceptive and, among other flaws, she fails to allege it with the requisite "specificity." Instead, she relies on conclusory allegations, labels, and a formulaic recitation of the elements of such a claim in order to dress up a garden-variety breach of contract claim as a claim under N.Y. G.B.L. §349. Furthermore, her claim under N.Y. G.B.L. §349 must be dismissed as to payments she made prior to August 28, 2009, based on the three-year statute of limitations (Plaintiff commenced this action on August 28, 2012). As to her unjust enrichment claim, it must be dismissed because Plaintiff alleges that valid contracts govern the subject matter of her claim.

The Amended Complaint deals also with three benefits to which Plaintiff claims she was entitled but was denied. Amended Complaint ¶¶ 12, 38-44, and Plaintiff's Fourth (breach of

---

[2]Plaintiff applied to use Checkmate II in March 2006, her first auto-debit occurred on May 14, 2006, she withdrew from Checkmate II in November 2008, and she reapplied in March 2009. Amended Complaint ¶¶ 23 & n.3, 25. Her two applications contained Checkmate II's terms and conditions, those applications are Exhs. 2 and 6 of Defendants' Answer to the Complaint, and Plaintiff actually quotes the former exhibit, not an exhibit of her own, in her Amended Complaint, at ¶¶ 16-17, 19. Both exhibits contain the same terms and conditions. It is appropriate, therefore, for the Court to consider them on this motion. *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

contract), Fifth (N.Y. G.B.L. §349), and Sixth (unjust enrichment) Claims for Relief.  Both her breach of contract claim and her claim under N.Y. G.B.L. §349 must be dismissed based on the statute of limitations.  Additionally, her claim under N.Y. G.B.L. §349 must be dismissed also for failure to allege it with, *inter alia*, the requisite specificity.  As to her unjust enrichment claim, it must be dismissed for two independent reasons: she alleges that valid contracts govern the subject matter and the six year statute of limitation had run out when she commenced this action.

Defendants submit that almost the entire Amended Complaint must be dismissed outright. All that should remain is a purported breach of contract claim involving <u>one</u> payment, of January 2013, based on the "prepayment" provision which came into effect in April 2012.[3]

## PROCEEDINGS TO DATE

On October 26, 2012, Defendants filed an Answer to the Complaint.  Attached to that Answer were copies of, *inter alia*, the terms and conditions of Checkmate II as set forth in Plaintiff's own applications for that service.  The Answer and its exhibits established that the Complaint contained a number of material misrepresentations and omissions.

After Defendants filed their Answer, counsel conferred about the material misrepresentations and omissions but were unsuccessful in resolving Defendants' concerns. Ultimately, in the undersigned's letter to the Court dated January 2, 2013, Defendants spelled out in detail the material misrepresentations and omissions of the Complaint.  On January 16, 2013, Plaintiff's counsel responded, essentially admitting, though downplaying, the criticisms set forth in the undersigned's letter of January 2nd.

Specifically, with respect to Plaintiff's allegations that Checkmate II payments had been "skipped" from December 2008 to April 2009, inclusive (*see* Complaint, ¶ 19, at p. 7), Plaintiff

admitted in the January 16th letter that she was not even a subscriber to Checkmate II during that period. The less than credible explanation she offered for her misrepresentation was that, at the time her Complaint was filed, she "did not recall withdrawing from Checkmate II in November 2008."[4] With respect to what she calls the "Grace Period" and "On Time Payment Benefits,"[5] she appears to have suffered another memory lapse before filing her Complaint, *i.e.,* in the January 16th letter, she acknowledged that she did not make her very first repayment on time and that she received a letter dated April 30, 2006, advising her that that failure disqualified her from those two benefits. Finally, with respect to the contractual provision she mischaracterized as a "Prepayment Misrepresentation" in her Complaint, she more or less conceded that she could not allege it was a term and condition of Checkmate II from 2007 to early 2012, the times when she alleged in the Complaint it was in effect (in fact, it did not come into effect until April 2012).

At the conference on January 18, 2013, Plaintiff, by her counsel, grudgingly agreed to amend her Complaint. The Amended Complaint was filed on February 1, 2013. While the Amended Complaint is not a model of clarity and still relies considerably on caginess, craft, and sleight-of-hand, the amendments addressed Defendants' concerns to an extent:

- the references to "skipped" payments from November 2008 to April 2009 have been eliminated (*compare* the Complaint, ¶ 19, at p. 7 *with* the Amended Complaint, ¶ 27, at p. 8).

- Plaintiff now admits that she did not make her very first payment on time and that she received a letter advising dated April 30, 2006, advising her that, as a result, she was disqualified from the two benefits. She now claims, however, that she called XES in May 2006 and was told, allegedly, that those benefits were reinstated. She alleges a breach of contract because they were not

---

[3]The earliest Plaintiff can allege the existence of that provision is July 21, 2012 (Amended Complaint, ¶ 21), but Defendants will stipulate that it came into effect in April 2012.
[4]Plaintiff's claim of forgetfulness is hard to buy because she made five payments by check during the period in question (Exh. 5 of XES and USB's Answer to the Complaint) and filled out a second application for Checkmate II in March 2009 (Exh. 6 of that Answer). (Defendants do not rely on the checks as a basis for moving to dismiss but merely to substantiate the basis for their disbelief).
[5]These are benefits available to those borrowers who make six and then thirty-six monthly payments on-time. Amended Complaint, ¶ 12(a) & (c).

reinstated at that time (*compare* the Complaint, ¶¶ 29-30, at p. 10 *with* the Amended Complaint, ¶¶ 38-42, at p. 11).

- Plaintiff now quotes terms and conditions which were actually in effect from 2007 to April 2012 (*compare* the Complaint, ¶¶ 17, 21, at pp. 5, 8 *with* the Amended Complaint, ¶¶ 16-17, 19, 21, and 30 at pp. 5-6, 9). She admits that she cannot allege the existence of what she had falsely called the "Prepayment Misrepresentation" until July 21, 2012 (Amended Complaint ¶ 21), and the defamatory phrase "Prepayment Misrepresentation" has been expunged.

Despite the amendments, problems remain. For example, in Paragraph 18 of the Amended Complaint, Plaintiff mischaracterizes the contractual provisions of Checkmate II which were in effect until April 2012 (quoted in Paragraphs 16 and 17) and, based on that mischaracterization, alleges that those provisions are "consistent" with the one which came into effect in April 2012 (quoted in Paragraphs 21, *i.e,* the one she had mischaracterized as a "Prepayment Misrepresentation" in her Complaint). Furthermore, while the "prepayment" provision which actually was in effect until April 2012 is later quoted in Paragraph 30 of the Amended Complaint, Plaintiff ignores that provision in Paragraph 27, which is the paragraph setting forth the core allegations of her claim of breach of contract.

## ARGUMENT

### POINT I

### THE APPLICABLE STANDARD UNDER RULE 12(B)(6)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), factual allegations in the complaint "must be enough to raise a right to relief above the speculative level," that is, they must state a claim which is truly "plausible on its face," not merely possible or conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). *See also Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan*, 2012 WL 5877426, at * 4 (S.D.N.Y. Nov. 21, 2012). ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face ... The plausibility standard ... asks for more than a sheer possibility that a defendant has acted

unlawfully." (quoting *Galiano v. Fidelity Nat., Tiotle Ins. Co.*, 684 F.3d 309, 313 (2d. Cir. 2012))). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Of course, even before *Twombly* and *Iqbal*, the rule was, and remains, that in considering such a motion, a court must not accept mere "conclusions of law or unwarranted deductions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994); *accord In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 201 (2d Cir. 2006) (a court should not credit "bald assertions and conclusions of law"). Moreover, a court's consideration of facts "is limited to [those] stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen*, 945 F.2d at 44. Of course, a court should not "assume that the plaintiff can prove facts that [she] has not alleged." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

Furthermore, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey), Ltd.,* 2012 WL 6186598, at * 4 (S.D.N.Y. Dec. 12, 2012) (quoting *Twombly*, 550 U.S. at 555). A plaintiff's complaint "'must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (quoting 5C Wright & Miller, Federal Practice and Procedure § 1216, 235-36 (3d ed. 2004)). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process" because, *inter alia*, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Twombly*, 550 U.S. at 559.

To be legally sufficient, the complaint must put forth facts that "confer a judicially cognizable right of action." *York v. Ass'n of the Bar of New York*, 286 F.3d 122, 125 (2d Cir. 2002). "Dismissal is proper where a plaintiff fails to plead the basic elements of a claim" in accordance with the standards set forth in the preceding paragraphs. *Cruise v. Doyle*, 2008 WL 116703, at *2 (S.D.N.Y. Jan. 9, 2008).

**POINT II**

**THE FIRST CLAIM FOR RELIEF, FOR ALLEGED BREACH OF CONTRACT FOR "MISAPPLIED" AND "SKIPPED" PAYMENTS, MUST BE DISMISSED AS TO ALL BUT ONE OF THE PAYMENTS**

Plaintiff's First Claim for Relief is a claim that "Defendants breached their contract [with Plaintiff] by, as alleged above, [and specifically in Paragraph 27 of the Amended Complaint], misapplying Prepayments, skipping *Checkmate II* payments after Prepayments, applying Prepayments to satisfy future installments or to prevent the next month's auto-debit, and ignoring borrowers' instructions as to application of Prepayments." Amended Complaint, ¶ 54. As noted, in Paragraph 27 of the Amended Complaint, Plaintiff specifies the payments, from June 2007 to January 2013, which she alleges were "misapplied" or "skipped."

It goes without saying, of course, that a breach of contract claim must be premised on the contractual terms and conditions which were <u>actually</u> in effect at the times in question. A claim of breach simply cannot be premised on terms and conditions which came into effect later. It certainly cannot be premised, either, on an unwarranted characterization or a bald assertion which "strain[s] the contract language beyond its reasonable and ordinary meaning." *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1191-92 (S.D.N.Y. 1996). *See also First Nationwide Bank*, 27 F.3d at 771 (a court should not accept "unwarranted deductions"); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d at 201 (the court should not credit mere "bald assertions").

7

Plaintiff, however, premises her claims for breach of contract with respect to all but one of the payments listed in Paragraph 27 on a mischaracterization of the terms and conditions which actually were in effect at the times in question. Defendants submit that, with respect to all but one of the payments listed in Paragraph 27 of the Amended Complaint (the one being the payment of January 10, 2013), the First Claim for Relief must be dismissed because Defendants complied with the terms and conditions which actually were in effect at the times the payments were made and applied.[6]

In Paragraphs 16 and 17 of the Amended Complaint, Plaintiff correctly quotes terms and conditions of *Checkmate II* which were set forth in her March 2006 and March 2009 agreements with respect to that service: "each automatic withdrawal will occur on the account's (student loan) regular scheduled due date" and "[y]our regular monthly payment will be deducted from your bank account and applied as of the assigned due date each month." (As noted earlier, Plaintiff expressly quotes from Exh. 2 of Defendants' Answer to the initial Complaint).

Then, however, Plaintiff self-servingly and grossly mischaracterizes the terms and conditions just quoted, claiming that, under them, "Prepayments were not supposed to advance future payments." Amended Complaint, ¶ 18. That is not at all what the terms and conditions quoted in Paragraphs 16 and 17 state, nor is such a term or condition set forth in the other terms and conditions of the agreements which Plaintiff quotes in Paragraphs 16 and 17. *See* Exhs. 2 and 6 of the Answer. Moreover, in a shameless effort to bolster this mischaracterization, in Paragraph 21 of the Amended Complaint Plaintiff quotes the "prepayment" provision which did not come into effect until April 2012 and conclusorily asserts that the terms and conditions quoted in Paragraphs 16 and 17 above are "[c]onsistent" with the new one quoted in Paragraph

---

[6]This does not mean that Defendants concede that the January 10, 2013 payment was "skipped." It merely means that Plaintiff's claim for breach of contract with respect to that one payment is based on the proper contractual provision.

21.  The Court can see for itself that there is no "consisten[cy]" between those terms, and an unwarranted allegation about the meaning of contractual language should not be credited as true just because Plaintiff has the temerity to make it.[7]

In fact, in Paragraph 30 of her Amended Complaint, Plaintiff quotes from the "prepayment" provision which appeared on the reverse side of the monthly statement she received from XES in April 2006, just as she was to begin repaying her loan.  As quoted in the Amended Complaint itself, the "prepayment" term of the 2006 monthly statement provides that "[i]f you have a FFELP ... loan and send in amounts in excess of the amount currently due, *your next payment due date will be advanced by the number of equivalent monthly payments.*" Amended Complaint, ¶ 30 (italics supplied).  Plaintiff appears to have quoted this "prepayment" provision from her April 2006 statement not for purposes of providing a complete factual statement of the applicable contract provisions but, instead, for purposes of claiming that XES did not send her a letter referenced in that provision.  *See* Amended Complaint, ¶ 30.  Whatever her reason for quoting it, by doing so she has confirmed the "prepayment" language which was in effect prior to April 2012.

The allegations of Paragraph 27 of the Amended Complaint, which are the core of Plaintiff's claim of breach of contract, are that whenever Plaintiff made a prepayment, *i.e.*, a payment excess of the amount that was currently due, Defendants advanced her next payments by the equivalent number of monthly payments.  In other words, she alleges in Paragraph 27 of her Amended Complaint that Defendants acted in a manner which was <u>consistent</u> with the

---

[7]It is fair to state that Plaintiff's pleading style is reminiscent of Lewis Carroll's Humpty-Dumpty, who said that words have whatever meaning he chooses to give them. Perhaps that sort of pleading would pass muster in Wonderland, but it should not in a federal court. *See Independent Energy Corp.*, 944 F. Supp. at 1191-92 (a court need not accept either a party's allegation that words of a contract are ambiguous or her strained interpretation of those words and may, as a matter of law, determine the meaning of unambiguous language).

"prepayment" provision set forth later in <u>Paragraph 30</u>, namely, the "prepayment" provision of her April 2006 statement.

In view of the foregoing, the Amended Complaint itself shows that Defendants complied with the contracts in effect at the relevant times, and Plaintiff is engaging in a disingenuous performance involving sleight-of-hand and smoke-and-mirrors. She tortures and mischaracterizes contract language (Amended Complaint, ¶¶ 16-18, 21) or simply ignores it (Amended Complaint, ¶ 30). Such a claim is not simply implausible (*See Twombly*, 550 U.S. at 570), it is frivolous. Based on the "prepayment" provision which applied before April 2012 (that is, the one Plaintiff quotes in Paragraph 30 of the Amended Complaint), Plaintiff's claim for breach of contract with respect to the payments, other than the January 10, 2013 payment, is meritless and must be dismissed as a matter of language, logic and law.

## POINT III

### THE SECOND CLAIM FOR RELIEF, UNDER N.Y. G.B.L. § 349, MUST BE DISMISSED BECAUSE DEFENDANTS DID NOTHING DECEPTIVE AND PLAINTIFF FAILS TO ALLEGE IT WITH, INTER ALIA, THE REQUISITE SPECIFICITY

The Second Claim for Relief alleges that Defendants' "deceptive acts" in violation of N.Y. G.B.L. § 349 consist of "representing to borrowers that: (i) 'they 'may prepay [their] loan at any time without penalty', (ii) monthly *Checkmate II* auto-debits, 'will be deducte[d] from [a borrower's] bank account and applied as of the assigned due dated (*sic*) each month', (iii) Prepayments will not satisfy installments or prevent the next month's debit, and (iv) they will receive notice if their loans were in a 'pre-paid condition'; when in fact Defendants' system works in the opposite manner by applying Prepayments to thwart prepayment and extract interest from student loan borrowers." Amended Complaint, ¶59. The first provision quoted comes from the "prepayment" term and condition in the April 2006 statement Plaintiff received from XES (Amended Complaint ¶ 30), the second from the *Checkmate II* terms and conditions in

10

effect through April 2012 (*id.* at ¶¶ 16-17), the third is a misquotation of the term and condition which came into effect in April 2012 (*id.* at ¶ 21), and the fourth comes from the April 2006 statement (*id.* at ¶ 30).

To state a claim under N.Y. G.B.L. § 349, the Plaintiff must allege three elements: 1) that the allegedly deceptive act was consumer-oriented, 2) that it was "misleading in a material way," and 3) that Plaintiff was injured as a result of it. *E.g., Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).

As to the second element, that the alleged act has been "misleading in a material way," the standard is an objective, not a subjective, one, meaning that a defendant's acts must mislead a "reasonable consumer acting reasonably under the circumstances." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 533 (N.Y. 1995); *accord Cohen v. U.S. Fid. and Guar. Co.*, 2005 WL 1036097, at *3 (S.D.N.Y. May 4, 2005). Furthermore, "Section 349 is violated, not when the 'least sophisticated consumer' would be confused, but when 'a reasonable consumer' would have been misled by defendant's conduct." *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 315 (E.D.N.Y. 1999).[8] In fact, the New York Court of Appeals, in adopting the objective standard, was frank: "[i]n explicating the legislative objective behind section 349, we are mindful of the potential for a *tidal wave of litigation against businesses that was not intended by the Legislature.* That possibility is avoided by while furthering the statutory purposes –  by our adoption of an objective definition of deceptive acts and practices[.]" *Oswego Laborer's*, 85 N.Y.2d at 26, 623 N.Y.S.2d 533 (italics supplied).

---

[8]Inasmuch as Plaintiff admits that hers is "consolidation loan," *i.e.,* a loan which consolidated her earlier student loans, Plaintiff's own allegations establish that the reasonable consumer for purposes of her claim would be an adult with a higher education.

Additionally, a party asserting a claim under N.Y. G.B.L. § 349 "must allege with some specificity the allegedly deceptive acts or practices that form the basis of the claim. Thus, conclusory allegations … are not sufficient to state a claim under Section 349." *Lava Trading*, 326 F. Supp. 2d at 438-39 (emphasis supplied). "Indeed, any other conclusion would effectively convert almost any garden variety breach of contract cause of action into a violation of section 349." *Id.* at 439; *accord USAlliance Federal Credit Union v. Cumis Ins. Soc.*, 346 F. Supp. 2d 468, 472 (S.D.N.Y. 2004); *Cohen*, 2005 WL 1036097, at *3.

With the foregoing principles, and those set forth in Point I, *supra*, in mind, it is clear that Plaintiff does not state a claim under N.Y. G.B.L. § 349. As demonstrated in Point II, Defendants did nothing deceptive or misleading with respect to the application of payments. Defendants complied with the contractual provisions which were in effect, and Plaintiff has merely raised an issue with respect to a single payment, that of January 10, 2013. It is, instead, Plaintiff who was deceptive and misleading in her Complaint (see the section on "Proceedings to Date," *supra*) and who, as explained in Point II, *supra*, continues to be deceptive and misleading.

Furthermore, the allegations of the Amended Complaint provide no specificity about Defendants' alleged deception, and Plaintiff's conclusory allegations and labels are not sufficient to state a claim under N.Y. G.B.L. § 349. *E.g., Lava Trading*, 326 F. Supp. 2d at 438-39. As noted, Plaintiff mischaracterizes the relevant contract language. Moreover, the detailed factual recitations (Amended Complaint, ¶¶ 14-28, 30-35) allege facts which, at best, rise to the level of a "garden variety breach of contract cause of action." *Lava Trading*, 326 F. Supp. 2d at 439. Elsewhere, Plaintiff offers nothing more than conclusory allegations and labels, but no specifics, about a "scheme" (Amended Complaint, ¶¶ 2-4, 29), "systematically ignored" instructions (*id.* at ¶ 36), and "deception" (*id.* at ¶¶ 37). *Lava Trading*, 326 F. Supp. 2d at 438 (a party asserting a claim under N.Y. G.B.L § 349 "must allege with some specificity the allegedly deceptive acts or

practices that form the basis of the claim [and] conclusory allegations ... are not sufficient to state [such] a claim.")  In the Second Claim for Relief itself, she merely recites formulaically the elements of cause of action under section 349. *See Twombly*, 550 U.S. at 555 (a plaintiff's obligation is to provide "more than labels and conclusions, and a formulaic recitation of the elements of cause of action").

Based on the foregoing, the Second Claim for Relief should be dismissed in its entirety.

### POINT IV

**THE SECOND CLAIM FOR RELIEF UNDER N.Y. G.B.L. § 349 MUST BE DISMISSED AS RESPECTS INJURIES/PAYMENTS PRIOR TO AUGUST 28, 2009, BASED ON THE STATUTE OF LIMITATIONS**

A cause of action under N.Y. G.B.L. § 349 accrues "when Plaintiff has been injured by a deceptive act or practice violating section 349" and must be brought within three years. *Gaidon, et al. v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 35 (N.Y. 2001). Paragraph 27 of the Amended Complaint is where Plaintiff specifies the dates when Defendants, allegedly, misapplied or skipped her payments.  The first six entries all list allegedly "skipped" or "misapplied" payments pre-dating August 28, 2009, the date three years before the filing of the instant action.  The claim under N.Y. G.B.L. § 349 with respect to those must be dismissed also pursuant to the statute of limitations.[9]

---

[9]The only dates in Paragraph 27 which are within the three year period are from July 14, 2011 to January 10, 2013. While Defendants deny any violations of N.Y. G.B.L. § 349 and have moved to dismiss the Second Claim for Relief in its entirety, they acknowledge that that Claim is timely brought as to damages/payments after August 28, 2009.

## POINT V

**THE FOURTH CLAIM FOR RELIEF, FOR BREACH OF CONTRACT, MUST BE DISMISSED BASED ON THE STATUTE OF LIMITATIONS BECAUSE THE ALLEGED BREACHES OCCURRED PRIOR TO AUGUST 28, 2006**

It is well-established that, in New York, a cause of action for breach of contract must be commenced within six years of the date of its accrual (C.P.L.R. § 213(2)). It is equally well-established that, "[i]n New York, a breach of contract cause of action accrues at the time of the breach[,]" even if "'no damage occurs until later.'" *Ely-Cruikshank Co., Inc. v. Bank of Montreal, et al.*, 81 NY.2d 399, 402, 599 N.Y.S.2d 501, 502-03 (N.Y. 1993). Furthermore, "[k]nowledge of the occurrence of the [purported] wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action." *Id.* at 403, 599 N.Y.S.2d at 503; *accord Hernandez v. Bank of Nova Scotia*, 76 A.D.3d 929, 930, 908 N.Y.S.2d 45, 46 (1st Dep't 2010).

### a.    The On Time Payment and Grace Period Benefits

According to the Amended Complaint itself, the alleged breaches with respect to the "On Time Payment Benefit" and the "Grace Period Benefit" occurred on or about May 8, 2006. Therefore, the action for breach of contract with respect to those benefits, commenced on August 28, 2012, is untimely and must be dismissed.

As Plaintiff notes, Defendants claim that "Plaintiff [is] not entitled to the On-Time Payment or Grace Period Benefits because [she] did not make her first payment due on April 14, 2006[.]" Amended Complaint, ¶ 40. She admits also that she had "received a notification, dated April 30, 2006 (the "April 30th Notice"), informing her that she missed a monthly payment and was *no longer eligible* for the On-Time Payment or Grace Period Benefits." Amended Complaint, ¶ 41 (italics supplied). She claims, however, that "[o]n May 8, 2006, [she] called the 800 number on the on the April 30th Notice to contest her disqualification from the [two]

14

borrower benefits programs on the grounds that she received inadequate notice of the payment due in April 2006." Amended Complaint, ¶ 42. She then alleges that, "[o]n this call, [she] *was told* that her eligibility for all borrower benefits *was reinstated."* *Id.* (italics supplied). Her Fourth Claim for Relief is premised on Defendants' failure to reinstate her eligibility for those benefits and that occurred, according to Plaintiff's own allegations, on May 8, 2006. Thus, based on the allegations themselves of the Amended Complaint, the alleged breach of contract occurred more than six years before Plaintiff commenced this action.

Assuming, *arguendo*, that Plaintiff now changes her mind and alleges that the breaches occurred once she made six and then thirty-six monthly payments, that revisionist argument is unavailing because it was simply her alleged damages which occurred at those times, not the alleged breach of the agreement to reinstate her eligibility. As noted, a cause of action for breach of contract accrues at the time of the breach, even if "no damage occurs until later" and even if Plaintiff had no knowledge of the occurrence of the purported wrong at the time it occurred. *Ely-Cruikshank Co.*, 81 NY.2d at 402-03, 599 N.Y.S.2d at 503-04.[10]

The doctrine of "continuing violation" is also unavailing to Plaintiff because it cannot be "predicated … on the continuing effects of earlier unlawful conduct." *Selkirk v. State of New York,* 249 A.D.2d 818, 819, 671 N.Y.S.2d 824, 825 (3d Dep't 1998); *accord Donas v. City of New York*, 62 A.D.3d 504, 505, 878 N.Y.S.2d 360 (1st Dep't 2009). ("absent any details of new discrete acts, rather than the effects of past acts …, plaintiff's allegations are insufficient to establish a continuing violation claim.").

---

[10]For what it is worth, it strikes Defendants as curious indeed that Plaintiff does not claim to have contacted XES about the matter of her On-Time Payment and Grace Period Benefits after she allegedly made six and thirty-six monthly payments. In fact, when Plaintiff communicated via email with representatives of XES in November 2011 and January-March 2012 about the application of her payments (Amended Complaint ¶¶ 32-35), it does not appear, at least from her allegations, that she ever raised the matter of her On-Time and Grace Period Benefits with XES's representatives.

For the foregoing reasons, the claims of the Fourth Claim for Relief with respect to the On-Time Payment and Grace Period Benefits must be dismissed.

### b.      The Principal Reduction Benefit

Plaintiff alleges that NS promised a Principal Reduction Benefit (Amended Complaint, ¶ 12(d)), a promise which was made in early 2006, before she even took out her consolidation loan.[11] She alleges also that that benefit would be given after the loan was fully funded (*id.*). She alleges it was fully funded (*id.* at ¶ 43), an event which can only have taken place before she received her monthly statement in April 2006 (*id.* at ¶30) and was to commence repayment.[12] Accordingly, based on the allegations themselves of the Amended Complaint, the breach of this alleged promise must have occurred before April 2006, months before August 28, 2006. Thus, her claim with respect to the Principal Reduction Benefit must be dismissed as well.

### POINT VI

### THE FIFTH CLAIM FOR RELIEF, UNDER N.Y. G.B.L. § 349, MUST ALSO BE DISMISSED IN ITS ENTIRETY BASED ON THE STATUTE OF LIMITATIONS BECAUSE ALL THE ALLEGED INJURIES OCCURRED PRIOR TO AUGUST 28, 2009

The Fifth Claim for Relief alleges that Defendants violated N.Y. G.B.L. § 349 with respect to "certain benefits," i.e., the Grace Period, the On-Time Payment and Principal Reduction Benefits. As set forth above, a  cause of action under N.Y. G.B.L. § 349 accrues "when Plaintiff has been injured by a deceptive act or practice violating section 349" and must be brought within three years. *Gaidon*, 96 N.Y.2d at 210, 727 N.Y.S.2d at 35.

---

[11]In Plaintiff's counsel's letter to the Court of January 16, 2013, the date of that promise is represented to have been around January 24, 2006, the date of a letter Plaintiff claims to have received from NextStudent. Neither Defendant XES nor Defendant USB has located a copy of such a letter or has a record of such a promise. Of course, for purposes of this motion, they are assuming, *arguendo,* the accuracy of Plaintiff's allegations.

[12]For what it is worth, XES's records show that the precise date was February 16, 2006, but Plaintiff's own allegations are sufficient to establish that the date was before she received her April 2006 statement and before her first payment was due.

With respect to the Grace Period Benefit, Plaintiff alleges that she was entitled to a rate reduction after making six on-time monthly payments.  Amended Complaint, ¶¶ 12(c) and 39. Depending on whether her first on-time payment occurred in either April 2006 or May 2006, she should have received, but did not receive, the Grace Period Benefit in September or October 2006 based on the allegations of her Amended Complaint.

With respect to the On-Time Payment Benefit, Plaintiff alleges that she was entitled to a rate reduction after making thirty-six on-time monthly payments.  Amended Complaint, ¶¶ 12(a) and 38.  Again, depending on whether her first on-time payment occurred in April 2006 or May 2006, she should have received, but did not receive, the On-Time Payment Benefit in March or April 2009 based on the allegations of her Amended Complaint.

With respect to the Principal Reduction Benefit, Plaintiff alleges that she was entitled to it after her loan was fully funded.  Amended Complaint, ¶¶ 12(d) and 43.  As explained in the preceding Point, the loan was fully funded prior to Plaintiff's making her first payment, so she should have received, but did not receive, the Principal Reduction Benefit sometime before April 2006 based on the allegations of her Amended Complaint.

All these alleged injuries occurred before August 28, 2009 (three years before Plaintiff commenced this action) based on the allegations of the Amended Complaint.  Accordingly, the Fifth Claim for Relief must be dismissed based on the statutes of limitations.

### POINT VII

**THE THIRD AND SIXTH CLAIMS FOR RELIEF, FOR "UNJUST ENRICHMENT," MUST BE DISMISSED BECAUSE VALID CONTRACTS WITH DEFENDANTS GOVERN THE SUBJECT MATTER OF PLAINTIFF'S FIRST AND FOURTH CLAIMS FOR BREACH**

As the foregoing Points demonstrate, the Amended Complaint itself alleges the existence of Plaintiff's promissory note, the prior and current terms and conditions of Checkmate II, and the "prepayment" term and condition on the back of Plaintiff's first monthly statement.

Furthermore, Plaintiff alleges agreements with respect to the "Grace Period Benefit," the "On-Time Payment Benefit," and the "Principal Reduction Benefit." The Second Circuit has made it crystal clear that a claim for unjust enrichment must be dismissed where there is a valid agreement governing the subject matter of plaintiff's claims. *See Poplar Lane Farm LLC v. The Fathers of Our Lady of Mercy*, 449 Fed. Appx. 57, 59, 2011 WL 5966373, at *1 (2d Cir. Nov. 30, 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract."); *Diesel Props S.r.L. v. Greystone Business Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (affirming dismissal of unjust enrichment claim); *Coty, Inc. v L'Oreal S.A.*, 320 Fed. Appx. 5, 6-7, 2009 WL 835849, at *1 (2d Cir. Mar. 31, 2009) ("It is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract."). Accordingly, Plaintiffs Third and Sixth Claims for Relief, both asserting a claim of unjust enrichment, must be dismissed in their entirety based on the allegations of the Amended Complaint that there were valid, enforceable agreements governing the subject matter of Plaintiff's claims for breach of contract.

## POINT VIII

**THE SIXTH CLAIM FOR RELIEF, FOR "UNJUST ENRICHMENT" WITH RESPECT TO THE THREE "BENEFITS," MUST BE DISMISSED BASED ON THE STATUTE OF LIMITATIONS**

A claim for unjust enrichment must be brought within six years of the alleged wrongful act. *Congregation Yetev Lev D'satmar, Inc. v. 26 Adar Corp.*, 192 A.D.2d 501, 505, 596 N.Y.S.2d 435, 437 (2d Dep't 1993); *Rosner v. Codata Corp.*, 917 F. Supp. 1009, 1022 (S.D.N.Y. 1996). As explained in Point V, the alleged wrongful act with respect the "Grace Period

Benefit" and the "On-Time Payment Benefit" occurred in May 2006, and the alleged wrongful act with respect to the "Principal Reduction Benefit" occurred even before that. As Plaintiff did not commence this action until August 28, 2012, any claim for unjust enrichment based on those alleged wrongful acts are time-barred and must be dismissed.[13]

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss.

HINSHAW & CULBERTSON LLP

By: _____

Edward K. Lenci (EL 3207)
Elizabeth K. Devine (ED 0082)

780 Third Avenue, 4th Floor
New York, NY 10017
Tel: (212) 471-6200

*Attorneys for Xerox Education Services, LLC (until recently known as Xerox Education Services, Inc. and sued herein as Affiliated Computer Services, Inc.), Affiliated Computer Services, Inc. (improperly sued herein), and U.S. Bank, N.A.*

---

[13]Obviously, if this motion is granted in its entirety (which it should be), it is doubtful that the monetary value of the narrow claim remaining would, as to any purported class, come anywhere close to $5 million, which is the jurisdictional minimum of 28 U.S.C. § 1332(d), the sole basis for this Court's jurisdiction alleged in the Amended Complaint. Defendants submit, however, that subject matter jurisdiction would still lie under 28 U.S.C. § 1331 because Plaintiff's allegations raise a federal question, namely, they implicate the Higher Education Act of 1965 (20 U.S.C. §§ 1071-1087-4) and the applicable regulations (34 C.F.R. § 682). *See Mims v. Arrow Financial Services, LLC,* __ U.S. __, 132 S.Ct. 740, 749 n. 9 (2012) ("Even when a right of action is created by state law, if the claim requires resolution of significant issues of federal law, the case may arise under federal law for 28 U.S.C. § 1331 purposes."); *Broder v. Cablevision Systems Corp., et al.,* 418 F.3d 187, 194-96 (2d Cir. 2005) (finding federal question jurisdiction existed with respect to claims, in a class action lawsuit, for breach of contract, violation of N.Y. G.B.L. §349 and unjust enrichment).

130514234v4 0030387