UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
CINDY L. BREITMAN, on behalf of herself and all:
others similarly situated,                                            :
                                                                      :
                                  Plaintiff,          :
                   - against -                        :
                                                      :
XEROX EDUCATION SERVICES, LLC, s/h/i  as   :
AFFILIATED COMPUTER SERVICES, INC.,        :
NEXTSTUDENT, INC., AND U.S. BANK, N.A.     :
                                                      :
                                  Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:  _____             │
│ DATE FILED: September 27, 2013       │
└─────────────────────────────────────┘

12 Civ. 6583 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Cindy Breitman ("Breitman") filed this putative class action on August 28, 2012, against defendants Xerox Education Services LLC ("Xerox"), NextStudent, Inc. ("NextStudent") and U.S. Bank, N.A. ("U.S. Bank").  She filed an amended complaint on February 1, 2013, asserting claims for breach of contract, violation of New York General Business Law § 349, and unjust enrichment.  Defendants moved to dismiss the amended complaint on February 27, 2013. For the following reasons, Defendant's motion is granted in part and denied in part, as set forth below.

## BACKGROUND[1]

In February, 2006, Breitman consolidated her federal student loans (the "Loans") with NextStudent, from which she initially borrowed money.  The Loans were subsequently sold to U.S. Bank, and at all times were serviced by Xerox.  NextStudent promised that borrowers who consolidated their loans would benefit from (1) a 1% rate reduction after timely making 36 consecutive payments (the "On-Time Payment Benefit"); (2) a 0.25% interest rate reduction for

---

[1] All facts are taken from the Complaint, unless otherwise noted.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007).

automating their payments (the "Auto Debit Benefit"); (3) a 0.375% interest rate reduction to the grace period rate after timely making six consecutive payments (the "Grace Period Benefit"); and (4) a 1% principal rebate after a loan is fully funded (the "Principal Reduction Benefit"). Defendants failed to apply the Principal Reduction Benefit, On-Time Payment Benefit or Grace Period Benefit to Breitman.

On March 23, 2006, Breitman enrolled in Checkmate II, an automated payment plan, in order to trigger the Auto Debit Benefit.  (Ans. Ex. 2 (Breitman's "Checkmate II Agreement").) She un-enrolled in Checkmate II in November 2008, reinstated her enrollment in May 2009, and was un-enrolled again on July 23, 2012.   While enrolled, Breitman received electronic confirmations every time an automated payment was made.

Breitman's April 2006 monthly statement, which she received after submitting her Checkmate II application but prior to the commencement of her Checkmate II deductions, stated that she would be notified if prepayments were applied to satisfy future payments in advance. Despite making intermittent prepayments – with the goal of reducing the Loans' principal balance, repaying it at an accelerated rate and thereby reducing the overall amount of interest payments that would be required of her – Breitman never received such notifications.   On November 14, 2011, Breitman emailed Xerox as follows:

> I would like it on record that any extra payments I make beyond my monthly Checkmate II deductions should be applied to my principal and should NOT advance my due date.  I want Checkmate II to ALWAYS continue to deduct on a monthly basis and I want the option to send in EXTRA payments that are applied to the principal.  Do NOT skip any monthly deductions.

(Am. Compl. ¶ 32.)   Nevertheless, her prepayments were applied by Xerox to satisfy future monthly payments, preventing subsequent automated payments without reducing the Loans'

remaining principal.[2]  Breitman repeatedly contacted Xerox in an effort to determine why her prepayments were not being used to pay down the Loans' principal balance, but did not receive an explanation.

Breitman seeks to represent two distinct classes of putative plaintiffs.  First, she seeks to represent a "Checkmate II Class," for whom prepayments were improperly applied.  Second, Breitman seeks to represent a "Benefits Class" of plaintiffs for whom Defendants failed to apply the Principal Reduction Benefit, On-Time Payment Benefit or Grace Period Benefit.

## DISCUSSION

When considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007).  "'Further, courts are normally required to look only at the allegations on the face of the complaint, though they may also consider documents attached to the complaint or incorporated into it by reference, any documents that are integral to the Plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice.'"  Wagner v. Royal Bank of Scotland Group PLC, No. 12 Civ. 8726, 2013 WL 4779039, *2 (S.D.N.Y. Sept. 5, 2013) (quoting Universal Trading & Inv. Co., Inc. v. Tymoshenko, No. 11 Civ. 7877, 2012 WL 6186471, *1 (S.D.N.Y. Dec. 12, 2012)).  The Court only "assess[es] the legally feasibility of the complaint;" it does not "assay the weight of the evidence which might be offered in support thereof."  Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003).  To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

---

[2] Specifically, Breitman alleges that she made prepayments on the following dates: June 23, 2007; August 10, 2007; September 9, 2007; September 21, 2007; October 21, 2007; August 12, 2009; July 14, 2011; November 14, 2011; November 21, 2011; and January 10, 2013.

556 U.S. 662, 677 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557).

## I.      Checkmate II Class Causes of Action

### a.   Count I: Breach of Contract

The terms and conditions for the Checkmate II program were set forth in Breitman's Checkmate II Agreement, dated March 23, 2006, which stated that "each automatic withdrawal will occur on the account's (student loan) regular scheduled due date."  (Ans. Ex. 2 at 1.)  The Checkmate II Agreement makes no mention whatsoever of how prepayments will be treated. Defendants contend that in the absence of such a term, there is no reason for prepayments made by borrowers enrolled in Checkmate II to be applied to the Loans' principal balance rather than to delay the date of future payments.

Defendants' is not the only reasonable interpretation of the Checkmate II Agreement. The absence of any specific prepayment clause could just as easily be read to mean that prepayment will have no affect on a borrower's automated payments under Checkmate II.  That the Agreement refers to a borrower's "*regular* scheduled due date," rather than their "*next* scheduled due date," suggests that Defendants will debit a borrower's account by the agreed-upon amount at regular intervals, i.e. every month, regardless of whether prepayments have been made.  At the very least, it evidences an ambiguity in the contract, which "exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or

4

business." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168,

178 (2d Cir. 2004) (quoting World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co., 345 F.3d

154, 184 (2d Cir. 2003)); see also In re AMR Corp., -- F.3d --, 2013 WL 4840474, *5 (2d Cir.

2013) ("Whether a contract is ambiguous is a question of law for the courts to resolve.").

      Defendants also rely on Breitman's April 2006 monthly billing statement, which

acknowledges that she is enrolled in the Checkmate II program and states that if she makes

prepayments, her "next payment due date will be advanced by the number of equivalent monthly

installments received."[3]  (Lenci Decl. Ex. 2 at 2.)  As an initial matter, the Court notes that it is

unclear whether this term is binding on Breitman because the record currently before the Court

does not suggest that she was made aware of this policy *before* enrolling in the Checkmate II

program, nor does the Checkmate II Agreement incorporate it directly or by reference.  See

Lifeguard Licensing Corp. v. Gogo Sports, Inc., No. 10 Civ. 9075, 2013 WL 4400520, *9

(S.D.N.Y. Aug. 15, 2013) ("Since it included new terms, [defendant's] response was a rejection

and counter-offer, rather than an acceptance of [plaintiff's] initial offer.").  Regardless, the April

2006 billing statement was as ambiguous as the Checkmate II Agreement, if not outright

contradictory.  In addition to aforementioned prepayment clause, it also states that payments will

be automatically deducted from Breitman's account "on day 14 of each month."  (Lenci Decl.

Ex. 2 at 1; see also id. at 2 ("Once a month, on your payment due date, your student loan

payment will be automatically deducted from your checking or savings account and applied to

your student loan account.").)  No explanation is provided as to how these facially inconsistent

clauses are to be reconciled.

---

[3] The monthly statement also stated that Breitman would "receive a letter informing [her] of [her] pre-paid condition," which did not occur.  (Am. Compl. ¶¶ 30-31.)  Nevertheless, her breach of contract claim is based on the purported misapplication of her prepayments, not Defendants' failure to keep her informed of her prepayment status. (See id. at ¶ 34; see also Pl. Opp'n at 12-23 ("Defendants breached [the] contract by failing to apply Plaintiff's payments as required").)

As a general matter, "[u]nless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." Eternity Global Master Fund, 375 F.3d at 178. Since Defendants have failed to advance any such reason, their motion to dismiss Breitman's first cause of action is denied.

b. Count II: N.Y. General Business Law § 349

i. *Failure to State a Claim*

"N.Y. Gen. Bus. Law ¶ 349(a) bars 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service' in New York." Lifeguard Licensing, 2013 WL 4400520 at *8. To state a claim for deceptive business practices, "a plaintiff must allege '(1) acts or practices that are consumer-oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts.'" Lava Trading, Inc. v. Hartford Fire Ins. Co., 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (quoting DePasquale v. Allstate Ins. Co., 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002)). Defendants assert that that they "did nothing deceptive or misleading with respect to the application of payments," but do not challenge that the Checkmark II program was consumer-oriented[4] or that Breitman was injured. (Def. Br. at 12.)

In order to avoid "the potential for a tidal wave of litigation against businesses that was not intended by the legislature," the Court of Appeals has adopted "an objective definition of deceptive acts and practices" that is limited "to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995). A financial institution's failure to properly

---

[4] Nevertheless, Breitman's argument that Defendants' practices were deceptive as they relate to her November 14, 2011, email is "essentially a 'private' contract dispute . . . which is unique to these parties, not conduct which affects the consuming public large." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 321 (1995). Accordingly, the Court focuses its analysis on only those aspects of Breitman's allegations that are consumer-oriented, rather than those involving only Breitman. See Oswego, 85 N.Y.2d at 25.

implement an agreement with a customer by improperly crediting a customer's account for their payments, as alleged herein, is objectively deceptive.  See Dolan v. Fairbanks Capital Corp., 03 Civ. 3285, 2013 U.S. Dist. LEXIS 34830, *52-56 (Mar. 13, 2013).  Accordingly, Defendants' motion to dismiss Count II in its entirety is denied.

ii.   *Statute of Limitations*

A private right of action under § 349 accrues when a plaintiff "has been injured by a deceptive act or practice," triggering a three-year statute of limitations.  Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 210 (2001).  Defendants contend that any payments made by Breitman prior to August 28, 2009, three years before the filing of the instant action, are therefore time-barred.  Where a § 349 claim is based on a series of allegedly deceptive acts, however, the "continuing violations doctrine" applies and "effectively toll[s] the limitations period until the date of the commission of the last wrongful act."  Harvey v. Metro. Life Ins. Co., No. 600663/04, 2005 N.Y. Misc. LEXIS 8422, *4 (Sup. Ct. Apr. 18, 2005), *aff'd*, 827 N.Y.S.2d 6, 6-7 (App. Div. 2006); see also Ring v. AXA Fin., Inc., No. 111869/04, 2008 WL 692564 (N.Y. Sup. Ct. Feb. 6, 2008) (applying continuing violations doctrine to § 349 claim where initial payments occurred outside statute of limitations but "the insurer continued to bill, and . . . plaintiff . . . continued to pay" within three years of filing suit).  Since the most recent allegedly deceptive act – the misapplication of Breitman's January 10, 2013, prepayment – is well within the statute of limitations, Breitman's § 349 claim is not time-barred.  Defendants' motion to dismiss those portions of it relating to payments made before August 28, 2009, is denied.

c.   Count III: Unjust Enrichment

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's

expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001). "[W]hen a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in . . . unjust enrichment . . . are generally precluded, unless based on a duty independent of the contract." Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 Fed. Appx. 57, 59 (2d Cir. 2011); see also Diesel Props S.r.l. v. Greystone Business Credit II LLC, 631 F.3d 42, 54 (unjust enrichment "is an obligation the law creates in the absence of any agreement."). Although there are exceptions, Breitman does not argue that any apply to the instant dispute. See, e.g., Am. Tel. & Util. Consultants, Inc. v. Beth Israel Med. Ctr., 763 N.Y.S.2d 466, 466 (App. Div. 2003); Knobel v. Manuche, 536 N.Y.S.2d 779, 781 (App. Div. 1989).

A plaintiff may plead both contract and quasi-contract claims in the alternative, see, e.g., Marcella v. ARP Films, Inc., 778 F.2d 112, 117 (2d Cir. 1985); A.T. Kearney, Inc. v. Global Crossing Telecomm., Inc., No. 11 Civ. 5035, 2013 WL 4838819, *3 (S.D.N.Y. Sept. 11, 2013), but Breitman has not adequately done so. With regard to unjust enrichment, Breitman alleges only that Defendants were enriched by "applying Prepayment[s] specifically to . . . maximize the amount of interest paid over the life of the loans and thwart borrowers' attempts to prepay their student loans." (Am. Compl. ¶ 64.) Assuming *arguendo* that the provisions that Breitman elsewhere alleges governed her prepayments were not applicable, she has not explained why Defendants would have any duty to apply her prepayments in the method most beneficial to her. Regardless of whether self-interestedness and greed are "good" or "right," cf. Wall Street (20th Century Fox 1987), a financial institution's efforts to maximize its return on investments – in this

case, the loans extended to Breitman – are not so inherently unjust that equity and good conscience require that a borrower's debt payments be returned to her. Since Breitman has failed to plead a claim for unjust enrichment in the absence of any contractual provisions governing her prepayments, Defendants' motion is granted with respect to Breitman's unjust enrichment claim relating to her prepayments.

## II.   Benefits Class Causes of Action

### a.   Count IV:  Breach of Contract

"[A] cause of action does not accrue until an injury is sustained.  An action accrues, then, when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso, 87 N.Y.2d 36, 43 (1993).  In this context, "a breach of contract cause of action accrues at the time of the breach" and has a "six-year Statute of Limitations." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402 (1993).  Since the instant action was brought on August 28, 2012, all of the allegedly inappropriate benefit denials must have occurred on or after August 28, 2006, to be actionable.

Defendants assert that that the alleged breaches with respect to the On-Time Payment Benefit and the Grace Period Benefit occurred on May 8, 2006, when, after being improperly disqualified from these benefits, Breitman was falsely told that her eligibility for the benefits was reinstated.  That is not, however, the breach alleged by Breitman.  Rather, Breitman alleged that Defendants' breached their contract with Breitman by "failing to apply" the benefits to the Loans.  (Am. Compl. ¶ 69.)  Since Breitman's "first payment [was] due on April 15, 2006" (id. at ¶ 40), and the On-Time Payment Benefit and Grace Period Benefit required six months and thirty-six months consecutive timely payments, respectively (see id. at ¶ 12), the earliest points at which Breitman could have qualified for these benefits would have been in October, 2006, and

April, 2009, respectively.[5]  Accordingly, the breach of contract action relating to the On-Time Payment Benefit and Grace Period Benefit accrued only once Defendants failed to apply the benefits to Breitman despite her having qualified for them, which occurred within the statute of limitations.

With regard to the Principal Reduction Benefit, Breitman alleges that it was to apply to a borrower's loans once they were "fully funded."  (See, e.g., Am. Compl. ¶ 12.)  Neither party explains what it means for a loan to be fully funded and Breitman does not specify when this occurred, but does not take issue with Defendants' assertion that it "can only have taken place before [Breitman] received her monthly statement in April 2006."  (Def. Br. at 16; see also Def. Reply at 8-9.)  Although this timing is not specified in the Complaint, and in the absence of any information to the contrary, the Court assumes that it is accurate for purposes of analyzing the instant motion.  Based on this timeline, Defendants contend that their alleged breach of contract for failure to apply the Principal Reduction Benefit to the Loans is time-barred, as the failure occurred on an unspecified date prior to April, 2006.  Breitman responds that each payment made on the Loans constitutes "a discrete breach of contract," as the amount of each payment would have been lower if the Principal Reduction Benefit had been applied.  (Pl. Opp'n at 23.)  Again, however, the alleged breach is Defendants' failure to apply the allegedly applicable benefit.  Each payment made *by Breitman* does not constitute a breach of contract *by Defendants*.  Nor does the continuing violations doctrine save Breitman's claim because it is "predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct."  Selkirk v. New York, 671 N.Y.S.2d 824, 825 (App. Div. 1998).  It does not apply here because "the mere fact that [Breitman] may continue to suffer damage . . . does not alter the fact that

---

[5] Breitman alleges that she made sufficient consecutive timely payments to qualify, but does not specify when she did so.  (See Am. Compl. ¶¶ 38-39.)

[Defendants'] unlawful conduct, if any, occurred [more than six years] before the claim was filed." Commack Self-Serv. Kosher Meats, Inc. v. New York, 704 N.Y.S.2d 737, 739 (App. Div. 2000). Accordingly, the breach of contract claim relating to the Principal Reduction Benefit is dismissed.

b.   Count V: N.Y. General Business Law § 349

Breitman's claims relating to the On-Time Payment Benefit, the Grace Period Benefit and the Principal Reduction Benefit must have accrued on or after August 28, 2009, to be actionable under N.Y. Gen. Bus. Law § 349's three-year statute of limitations. As previously discussed, these claims accrued in October, 2006, April, 2009, and prior to April, 2006, respectively. (See supra at § II(a).) The continuing violations doctrine is not applicable because the cause of action accrued when Defendants failed to apply each of the aforementioned benefits to the Loans, rather than upon each of Breitman's allegedly inflated loan payments. (Id.) Breitman's § 349 claim relating to On-Time Payment Benefit, the Grace Period Benefit, and the Principal Reduction Benefit is therefore dismissed.

c.   Count VI: Unjust Enrichment

With respect to the Benefits Class, Breitman alleges that Defendants were unjustly enriched "[b]y failing to apply promised borrower benefits as a scheme to thwart prepayment of student loans and make the cost of borrowing as high as possible." (Am. Compl. ¶ 79.) For the same reasons discussed supra at § I(c), Breitman has failed to adequately plead a claim for unjust enrichment. Defendants' motion to dismiss is granted with respect to Count Six.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Counts III (unjust enrichment), IV (breach of contract) but only with respect to the Principal Reduction

Benefit, V (N.Y. Gen. Bus. Law § 349), and VI (unjust enrichment). Defendants' motion is DENIED in all other respects. The Clerk of Court is directed to terminate the motion at Docket Number 24. The parties are ordered to submit a civil case management plan to the Court by October 25, 2013.

Dated: New York, New York

      September 27, 2013

SO ORDERED

PAUL A. CROTTY
United States District Judge