# HINSHAW
& CULBERTSON LLP

Edward K. Lenci
elenci@hinshawlaw.com

November 25, 2013

**ATTORNEYS AT LAW**
800 Third Avenue
13th Floor
New York, NY 10022

**VIA ECF**

212-471-6200
212-935-1166 (fax)
www.hinshawlaw.com

The Honorable Paul A. Crotty
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Breitman v. Xerox Education Services, LLC, et al.*, 12 cv 6583 (PAC)

Dear Judge Crotty:

I represent Xerox Education Services, LLC ("XES") and U.S. Bank, N.A. ("USB"). This letter is respectfully submitted in opposition to Plaintiff's request for a pre-motion conference.

### A Motion to Certify Class Is Premature

None of the various determinations necessary to certify class (Plaintiff lists only the threshold requirements) can be made unless the Court resolves factual disputes relevant to each requirement and finds that the facts relevant to each are established. See *In Re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006). To do this, the Court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* This is because "Rule 23 does not set forth a mere pleading standard. ... [Plaintiff] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (italics in original). While, for the reasons set forth below, XES and USB respectfully submit that Plaintiff cannot meet Rule 23's standards, they further respectfully submit that any motion for class certification is presently premature because document production is only now commencing and Plaintiff's deposition has not yet been taken.

### Even Now, Plaintiff's Claim Are Obviously Atypical, Uncommon, Etc.

**The So-Called "Benefits Class":** In her first pleading, Plaintiff claimed that she and other purported class members have been deprived as a matter of course or policy of their so-called "On Time Payment" and "Grace Period" benefits when those benefits were supposed to take effect. The truth, as it turned out, was that Plaintiff disqualified herself from receiving those benefits by failing to timely make her first payment, due in April 2006 (she paid a late fee, too). She alleges, however, that when she learned of her disqualification via a letter from XES, she called XES on or about May 8, 2006, and was told during the call that the benefits were "reinstated." That alleged oral representation to her and her alone is the sole basis of her claim

Honorable Paul A. Crotty
November 25, 2013
Page 2

for breach of contract as respect the two benefits, as set forth in her Amended Class Action Complaint.

XES and USB respectfully submit that, given the foregoing facts, Plaintiff's claims concerning the benefits lack the requisite typically, commonality, predominance, numerosity, *etc.*, for her to represent any class. "Typicality" is satisfied only when "each class member's claim arises from the same course of events and each class member makes similar arguments to prove the defendant's liability." Fed. R.Civ.P. 23(a)(3). "Predominance" requires that "'a plaintiff ... establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.'" *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004). "Commonality" cannot be met where members must prove "different facts ... or none at all" to prevail on claims. *Trawinski v. KPMG LLP*, 2012 WL 6758059 at *6 (S.D.N.Y. 2012). Courts typically deny certification where resolving the claims would require individualized inquiries. See *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002).

**The So-Called "Checkmate II Class"**: Plaintiff first signed up for Checkmate II by a paper application she submitted in March 2006. In April 2006, she received a welcome form from XES which contained, *inter alia*, a "prepayment" provision which stated how prepayments would be applied. Plaintiff continued using Checkmate II to make her payments until November 2008, when she called XES and asked to be removed from that service. She claims that she withdrew from it because she was dissatisfied with it. She made a number of payments by check in the months that followed. Then, despite whatever dissatisfaction she had had previously, Plaintiff reapplied for Checkmate II, again by paper application, and recommenced Checkmate II payments in or about May 2009. In July 2012, Plaintiff, for whatever reason, again withdrew from Checkmate II and then reapplied, this time using XES's website, not a paper application.

By using the website to reapply this time around, Plaintiff accepted new terms and conditions which became available to borrowers in April 2012, including a "prepayment" provision which differs considerably from the one on the welcome form she had received in 2006. However, only those Checkmate II users who have applied or reapplied for Checkmate II on the website are subject to those new terms and conditions -- and not all Checkmate II users have done so. Additionally, much of Plaintiff's claim hinges on emails between her and representatives of XES concerning how she herself wanted her own prepayments applied.

XES and USB respectfully submit that, given these facts, Plaintiff's claims lack, *inter alia*, the typically, commonality and predominance necessary for her to represent a class.

**Plaintiff Lacks Standing To Represent All Borrowers Whose Loans XES Services**

NextStudent originated Plaintiff's loan and USB acquired it later, and XES has serviced her loan at all relevant times. Plaintiff asserts, however, that she can represent all borrowers against all lenders whose loans XES services. Even apart from Plaintiff's inability to meet Rule 23's requirements (see above), XES and USB respectfully submit that Plaintiff also lacks standing to assert claims on behalf of borrowers without any connection to both NextStudent and USB; the proposed classes should not even be of all USB borrowers because there is another purported class action, *Shirvani v. Xerox Education Services, LLC and U.S. Bank, N.A.*, which

Honorable Paul A. Crotty
November 25, 2013
Page 3

concerns loans both originated and held by USB. Plaintiff cannot and should not be permitted to expand the scope of her purported class of "all those similarly situated" beyond those borrowers whose loans, like her own, originated with NextStudent and are now held by USB.

### **Plaintiff Will Be A Poor Class Representative Because She Lacks Credibility**

A class representative must adequately protect the interests of the class; and this is jeopardized when the purported representative lacks credibility. See *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir.1983) (courts may consider the honesty and trustworthiness of the named plaintiff); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (plaintiff was not an adequate class representative given his contradictory testimony which created "serious concerns as to his credibility at any trial"); *Koenig v. Benson*, 117 F.R.D. 330, 338 (E.D.N.Y.1987) ("In the Second Circuit a proposed class representative can be ruled inadequate under Rule 23(a)(4) if he is vulnerable to attacks on his credibility concerning the key facts at issue in the case").

Although XES and USB maintain that class certification is premature, Plaintiff already demonstrably lacks credibility because her initial pleading, grudgingly amended to state something more of the truth, contained material falsehoods and omissions:

1. Plaintiff first alleged falsely that her Checkmate II payments had been "skipped" from December 2008 to April 2009, inclusive. Through counsel, she gave the Court the incredible explanation that she simply forgot both having withdrawn herself from Checkmate II in 2008 and having made a number of payments by checks in the months that followed.

2. Plaintiff first alleged that she and others were deprived as a matter of course of the "On Time Payment" and "Grace Period" benefits. The truth was that she did not make her very first repayment on time, she paid a late fee, she received a letter advising her that that failure on her part disqualified her from the benefits, and her claim was actually premised on an *alleged* oral representation that her benefits were "reinstated."

3. Plaintiff falsely claimed that a key contractual term applied at all relevant times when, in fact, she was not even aware of it, and it was not even applicable to her, until July 2012 when she reapplied for Checkmate II on XES's website.

For all these reasons, and others, Plaintiff's request for a pre-motion conference should be denied, at least for the present. Thank you for your continued attention to this dispute.

Respectfully,

HINSHAW & CULBERTSON LLP

By: _____
Edward K. Lenci

cc: Lawrence P. Eagel, Esq. (via email)